**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

NELSON MAJIN CAMPOS JACINTO,

      Petitioner,

      v.                              Case No. 2:26-cv-00614 KWR-KK

DORA CASTRO, *Warden, Otero County Processing Center*,
TODD M. LYONS, *Acting Director of*
*Immigration And Customs Enforcement*,
KRISTI NOEM, *Secretary, U.S. Department*
*Of Homeland Security*, AND PAMELA BONDI,
*U.S. Attorney General*,

      Respondents.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Petitioner's Petition for Writ of Habeas Corpus (**Doc. 1**). Having reviewed the parties' pleadings, briefing, and the relevant law, the Court finds that the Petition is well-taken and therefore is **GRANTED in part.** The Court orders Respondents to hold an individualized bond hearing for Petitioner within **seven (7) days** of the entry of this order.

## BACKGROUND

Petitioner is a citizen of Mexico who has lived in the United States for almost three years. Pet. at 3, doc. 1. He is detained by Respondents at the Otero County Processing Facility in New Mexico.  His fiancée is a U.S. Citizen, and he has an infant child.  Pet. at 5. On November 17, 2025, Petitioner was arrested for domestic violence and subsequently transferred to ICE custody. *Id*.

On September 5, 2025, the Board of Immigration Appeals issued a decision holding that immigration judges lacked authority or jurisdiction to consider bond requests for any person who entered the United States without admission. *Matter of Yajure Hurtado,* 29 I & N Dec. 216 (BIA 2025) ("Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission."). Here, Respondents appear to assert that Petitioner is not entitled to a bond hearing as he was not admitted.

In sum, Petitioner has remained in federal immigration custody without an opportunity to post bond or request a conditional release because his detention has been classified as mandatory under 8 U.S.C. § 1225(b). Petitioner requests that the Court issue a writ of habeas corpus directing his immediate release.

Respondents filed a response to the Petition in which they incorporated the arguments they raised in a prior case before the Court. *See* Resp., Doc. 7 at 2-3 (citing *Munoz Teran v. Bondi*, 2:25-cv-1218 KWR-SCY, 2026 WL 161527 (D.N.M. Jan. 21, 2026)). The Respondents' response in *Munoz Teran* did not raise administrative exhaustion or jurisdiction. Moreover, neither the response in this case nor in *Munoz Teran* asserted that the petitioner was detained under § 1225(b)(1). Rather, here Respondents assert that Petitioner is detained under § 1225(b)(2)(A). Therefore, the Court declines to *sua sponte* raise administrative exhaustion or detention under § 1225(b)(1). The sole issue is whether §§ 1225(b)(2)(A) or 1226(a) applies to Petitioner.

## LEGAL STANDARD

Petitioner seeks release from detention under a habeas statute, 28 U.S.C. § 2241. The Constitution guarantees that "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner

who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88).

## DISCUSSION

Petitioner asserts in his § 2241 habeas petition that he is in custody in violation of the Constitution or laws or treaties of the United States, and he should be released. Respondents assert that Petitioner is mandatorily detained pursuant to § 1225(b)(2)(A).  At issue is whether Petitioner is appropriately mandatorily detained under that section, or whether he is entitled to a bond hearing or release under the discretionary detention provisions of § 1226(a). As explained below, Petitioner, who has lived in the United States for years, is subject to the discretionary detention provisions of § 1226(a) and is therefore entitled to an individualized bond hearing before an immigration judge.

**I.**     **The discretionary detention provisions under § 1226(a) apply to Petitioner, rather than the mandatory detention provisions under § 1225(b)(2)(A).** [1]

At issue is whether § 1225(b)(2)(A) or § 1226(a) governs Petitioner's detention while a decision on his removal is pending. Mandatory detention under § 1225(b)(2)(A) applies to noncitizens "seeking admission" into the United States.  Petitioner asserts that he is entitled to a bond hearing or immediate release pursuant to § 1226(a), as he has resided in the United States for years and is not "seeking admission" into the United States. Despite this statutory language, Respondents argue that the mandatory detention provision under § 1225(b)(2)(A) applies, as that

---

[1] Section I is taken from several other opinions issued by the undersigned.  *See, e.g., Camac-Huanca v. Noem*, No. 2:25-CV-01253 KWR-JFR, 2026 WL 357651, at *2-6 (D.N.M. Feb. 9, 2026)*.

provision covers not only those who present themselves at the border, but any noncitizen who is present in the United States without admission, pending a decision on removal. *See, e.g., Matter of Yajure Hurtado,* 29 I & N Dec. 216 (BIA 2025) ("Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission."). As explained below, the statutory phrase "seeking admission" cannot be interpreted to apply to Petitioner, who has lived in the United States for years. Therefore, Petitioner is entitled to a bond hearing under § 1226(a).

In construing the statute at issue, the Court begins with its plain text. *See Chickasaw Nation v. United States,* 208 F.3d 871, 876 (10th Cir. 2000). "If the terms of the statute are clear and unambiguous, they are controlling absent rare and exceptional circumstances." *Id*. In ascertaining the meaning of the text, the Court considers the "language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also Conrad v. Phone Directories Co.,* 585 F.3d 1376, 1381 (10th Cir. 2009) ("We also take into account the broader context of the statute as a whole when ascertaining the meaning of a particular provision."). The Court also considers traditional canons of statutory interpretation. *Conrad,* 585 F.3d at 1381; *Ramah Navajo Chapter v. Salazar*, 644 F.3d 1054, 1062 (10th Cir. 2011). Generally, the Court only considers non-textual evidence bearing on Congress's intent or purpose, such as legislative history, if statutory language is ambiguous. *See, e.g., United States v. Husted,* 545 F.3d 1240, 1247 (10th Cir. 2008).

The Immigration and Nationality Act ("INA") generally contemplates two detention regimes for noncitizens pending a decision on removal. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). The first detention regime provides that when "an applicant for admission" is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted," the noncitizen "shall be

detained" for removal proceedings. 8 U.S.C. § 1225(b)(2)(A). This provision mandates detention and does not expressly afford a bond hearing. *Id.* Section 1225 has exceptions to mandatory detention, which are not relevant here. The second detention regime authorizes the arrest and detention "on a warrant issued by the Attorney General" of noncitizens "pending a decision on whether [they are] to be removed." 8 U.S.C. § 1226(a). Section 1226(a) expressly authorizes the Attorney General to detain the arrested noncitizen, or release them on bond or conditional parole. *Id.* Section 1226(c) has certain exceptions which mandate detention. For example, mandatory detention under § 1226(c) applies to a noncitizen who is (1) "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General" and (2) "charged with, is arrested for, is convicted of, [or] admits having committed" certain criminal acts. § 1226(c)(1)(E).

Put another way, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289 (emphasis added), *quoted in Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (concluding that § 1226(a) applied to noncitizens already present in country who were not admitted).

Thus, for § 1225(b)(2)(A)'s mandatory detention proceedings to apply, the Court must find as follows: (1) the noncitizen is "an applicant for admission", (2) who is "seeking admission," and (3) "not clearly and beyond a doubt entitled to be admitted."

Respondents argue that Petitioner is an applicant for admission and the § 1225(b)(2)(A) mandatory detention provisions apply. Petitioner is likely an applicant for admission under the statute. Here, an "applicant for admission" is defined as "an alien present in the United States who

has not been admitted or who arrives in the United States." § 1225(a)(1). "The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Because Petitioner is present in the United States and has not been admitted, he may be deemed by the statute to be an "applicant for admission," satisfying the first criteria of § 1225(b)(2)(A).

But the detention provision under § 1225(b)(2)(A) applies only to noncitizens "seeking admission." § 1225(b)(2)(A). As explained below, under the plain meaning of the statute, Petitioner, who has been living in the United States for years, is not "seeking admission." *Id.* "Admission" is defined as "the lawful entry of the noncitizen into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). The term "entry" is undefined in the statute. And Respondents do not argue that "entry" has any technical meaning in the statutory provisions at issue. Assuming it has no technical meaning, it can be given its "ordinary, contemporary, common meaning." *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017) (internal quotation marks omitted); *United States v. Santos*, 553 U.S. 507, 511 (2008) ("When a term is undefined, we give it its ordinary meaning.").

"Entry" most commonly means "[t]he action or an act of entering a place, area, building, etc." Entry, Oxford English Dictionary (2018); Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/entry (last visited January 21, 2026) ("the act of entering"); Entry, Black's Law Dictionary (12th ed. 2024) ("*Immigration.* Any entrance of an alien into the United States, whether voluntary or involuntary."). "Seeking" in this context most naturally means trying to obtain something or trying to bring about or effect. Seek, Oxford English Dictionary Online (2018). "Seeking" is also in the present participle form, which expresses present action. Present Participle, Merriam Webster Dictionary, https://www.merriam-

webster.com/dictionary/present%20participle (last visited January 21, 2026); *see also Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. Aug. 29, 2025) (The use of the present participle in § 1225(b)(2)(A) "implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection."). Taken together, the "seeking admission" phrase in § 1225(b)(2)(A) applies to noncitizens who are trying to lawfully and physically enter the country. It does not apply to noncitizens who have lived in the United States for years and are not seeking lawful entry into the United States.[2]

Respondents appear to suggest that all "applicants for admission" are deemed to be "seeking admission." Respondents essentially interpret "seeking admission" as coterminous with "applicants for admission."  Respondents' construction "would render § 1225(b)(2)(A)'s use of the phrase 'seeking admission' superfluous, violating one of the cardinal rules of statutory construction." *Castanon-Nava v. U.S. Dep't of Homeland Sec.,* 161 F.4th 1048, 1061 (7th Cir. 2025) (citing *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning.")). "If an interpretation of one provision 'would render another provision superfluous,' courts presume that interpretation is incorrect." *Castanon-Nava,* 161 F.4th at 1061 (quoting in part *Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010)). "And this presumption is 'strongest when an interpretation would render superfluous

---

[2] The Court's understanding of the plain, ordinary meaning of the word "entry" in this statute, *i.e.*, that entry means the physical act of going into the country, accords with how it is understood and used by the United States Supreme Court in the immigration context. The word "entry" has long been used to refer to physically going into the country, regardless of whether the entrant is legally in the United States.  *See, e.g., Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality."); *Zadvydas*, 533 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.").

another part of the same statutory scheme,' as would be the case here." *Castanon-Nava,* 161 F.4th at 1061 (quoting in part *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013)). Therefore, the Court declines to interpret "seeking admission" in a manner wholly synonymous with "applicant for admission."

Rather than the two phrases being synonymous, the statutory language elsewhere in § 1225 appears to distinguish the phrase "applicants for admission" from the phrase "seeking admission," suggesting that these phrases have separate meanings. Section § 1225(a)(3) provides that "All aliens … *who are applicants for admission or otherwise seeking admission* or readmission to or transit through the United States shall be inspected by immigration officers." *Id.* (emphasis added). The word "or" in its "ordinary use is almost always disjunctive, that is, the words it connects are to be given separate meanings." *Loughrin v. United States*, 573 U.S. 351, 357 (2014) (quoting *United States v. Woods*, 571 U.S. 31, 45 (2013)). Taken together, "or otherwise" is "used to refer to something that is different from something already mentioned." *Or otherwise*, Merriam Webster Online, https://www.merriam-webster.com/dictionary/or%20otherwise (last visited January 12, 2026). If "applicant for admission" had the same meaning as "seeking admission", there would be no need to repeat the phrase "seeking admission" or use the phrase "or otherwise." Thus, it is clear that the phrases "applicants for admission" and "seeking admission" do not have the same meaning.

Respondents' interpretation would also render superfluous recent amendments to § 1226(c). Section 1226(c)(1)(E) mandates detention for certain noncitizens who are implicated in certain crimes. Section 1226(c)(1)(E), which was added to the statute in 2025 by the Laken Riley Act, mandates detention for any noncitizen (1) who is inadmissible under § 1182(a)(6)(A)(i) as an "alien present in the United States without being admitted or paroled," *and* (2) who "is charged

with, arrested for, convicted of, or admits" to committing certain crimes. 8 U.S.C. § 1226(c)(1)(E). Under Respondents' interpretation, all noncitizen who are present in the country without being admitted or paroled must already be mandatorily detained under § 1225(b)(2)(A), rendering the recent amendment superfluous. Generally, courts "do not lightly" find that Congress adopted "two separate clauses in the same law to perform the same work." *United States v. Taylor*, 596 U.S. 845, 857 (2022).

The Court's interpretation of § 1225(b)(2)(A) is consistent with the decisions of multiple courts, which have found that a person who has been present in the United States is not "seeking admission" and therefore not subject to mandatory detention under § 1225(b)(2)(A). *See, e.g., Castanon-Nava v. U.S. Dep't of Homeland Sec.,* 161 F.4th 1048, 1061 (7th Cir. 2025); *see also Barco Mercado v. Francis,* No. 25-CV-6582 (LAK), 2025 WL 3295903, at *13 (S.D.N.Y. Nov. 26, 2025) (collecting cases in Appendix A); *Pu Sacvin v. Ybarra*, No. 2:25-CV-1031-KG, 2025 WL 3187432, at *3 (D. N.M. Nov. 14, 2025) ("Noncitizens seeking admission are those who have not effected an entry into the United States.") (quotation marks omitted); *Buenrostro-Mendez v. Pamela Bondi,* _F.4th _, 2026 WL 323330, at *10 (5th Cir. 2026) (Douglas, J. dissenting).

The Court's interpretation is also consistent with the Supreme Court of the United States' dicta. In *Jennings*, the Supreme Court explained that Section 1225(b) "applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." *Jennings,* 583 U.S. at 297. In contrast, the Court explained that Section 1226 "applies to aliens already present in the United States." *Id.* at 303. The Court further noted that "Section 1226(a) creates a default rule for those aliens [present in the United States] by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings," and also "permits the Attorney General to release those aliens on bond." *Id.* The

9

*Jennings* Court's description of the relationship between §§ 1225 and 1226 is consistent with this court's conclusion.

Respondents argue that the Court's interpretation would treat noncitizens unlawfully present in the United States preferentially to noncitizens who arrive at the border. They imply this would be unfair or would reward noncitizens who pass the border without inspection. Because the statutory language is unambiguous, the Court's task is to ascertain its plain meaning, and the Court generally should not address this extra-textual policy consideration. *See McGraw v. Barnhart*, 450 F.3d 493, 499 (10th Cir. 2006). Alternatively, this seemingly different treatment of those who are already present in the United States is well-supported in case law. "The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas*, 533 U.S. at 693; *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality.").

Respondents cite to a decision by the BIA holding that § 1225(b)(2)(A) applies to noncitizens present in the country who were not inspected at the border. *See Matter of Yajure Hurtado,* 29 I & N Dec. 216 (BIA 2025). *Hurtado* is not binding on this court, and the agency's interpretation carries only the "power to persuade." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024). As explained above, the Court does not find *Hurtado* persuasive.

Here, applying the above statutory interpretation to the facts of this case, it is clear that Petitioner is not "seeking admission" under § 1225(b)(2)(A). He has lived in the United States for years. And neither the Petition nor the Respondents' Response identified any facts to suggest Petitioner was "seeking admission", i.e., lawful physical entry into the country, at the time of his

10

arrest. Therefore, it is clear that the detention provision under § 1225(b)(2)(A) does not apply to Petitioner.

Instead, Section 1226(a), the default, more general detention provision pending a decision on removal, governs Petitioner's detention. "Section 1226 generally governs the process of arresting and detaining that group of aliens pending their removal." *Jennings*, 583 U.S. at 288. Thus, the Court grants in part the Petition.

## II. <u>The Court finds that a bond hearing is an appropriate remedy for violation of the INA.</u>

Petitioner appears to request immediate release. However, Petitioner did not carry his burden that the Court is required to release him rather than order a bond hearing. Moreover, he did not argue or carry his burden that the Court should shift the burden at any bond hearing to the Government. As explained below, relying in part on the burden of proof and principles of party presentation, the Court declines to immediately release Petitioner. Therefore, exercising its discretion under § 2241, the Court will order an individualized bond hearing.

Petitioner bears the burden of proof of showing that he is entitled to relief or a remedy. *See* 28 U.S.C. § 2241; *see also Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention [under § 2241] is on the petitioner."); *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) ("[I]t was error for the District Court to effectively impose on the Government the burden of proving that [petitioner] was *not* 'in custody in violation of the Constitution or laws or treaties of the United States' " under § 2241); *Odell v. Hudspeth*, 189 F.2d 300, 302 (10th Cir. 1951) (In § 2241 proceeding, "[t]he burden of proof was upon the petitioner to sustain these allegations."); *see also Smith v. Workman*, 550 F.3d 1258, 1273 (10th Cir. 2008) (noting that, in the context a *Brady* violation, the petitioner "bears

11

the burden of showing that the prosecution suppressed material evidence favorable" to the petitioner); *McDonald v. Feeley*, 535 F. Supp. 3d 128, 135 (W.D.N.Y. 2021) (in § 2241 proceeding challenging his immigration detention, concluding that petitioner bears burden of proving by preponderance of evidence that he is detained contrary to law).

Section 1226(a) affords Respondents discretion to detain, release on bond, or parole a noncitizen. Notably, this section does not expressly provide a statutory right to immediate release. Generally, the release or bond decision by an immigration judge involves the weighing of evidence and is discretionary. § 1226(a); *Jennings,* 583 U.S. at 295. Discretionary bond decisions are generally not reviewable. 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."). "This provision precludes the Court from reviewing the IJ's decision that denied bond because Petitioner was a flight risk." *Mwangi v. Terry*, 465 F. App'x 784, 786–87 (10th Cir. 2012) ("Therefore, to the extent Mr. Mwangi challenges the agency's discretionary bond decision, the magistrate judge was correct that the court lacked jurisdiction.") (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)); *Jennings,* 583 U.S. at 295 (explaining that § 1226(e) bars a challenge to a discretionary judgment or decision by the Attorney General regarding detention or release but does not preclude challenges to the statutory framework); *see also Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022) ("Although we lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision…").

To be sure, federal district courts have broad equitable powers in ordering habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). A federal court is vested with "the largest

power to control and direct the form of judgment to be entered in cases brought up before it on *habeas corpus.*" *Hilton v. Braunskill,* 481 U.S. 770, 775 (1987) (citation omitted). "Federal habeas corpus practice ... indicates that a court has broad discretion in conditioning a judgment granting habeas relief." *Id.* In issuing a writ of habeas corpus, a federal court has the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243; *see also Clayton v. Jones*, 700 F.3d 435, 443 (10th Cir. 2012) (noting that § 2243 gives district courts "broad discretion to craft appropriate habeas relief."). Generally, the Court has authority to order release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971). It is the "nature of the violation" that "determines the scope of the remedy." *Id.* at 16.

Here, the Court in its discretion would order a bond hearing, as an individualized bond hearing would provide Petitioner with the process he is due under the statute. *See* § 1226(a) (providing that the Attorney General *may* continue to detain a noncitizens pending a decision on removal or *may* release the noncitizen on bond or parole); *see Martinez Escobar v. Baltazar*, No. 26-CV-00296-NYW, 2026 WL 503313, at *4 (D. Colo. Feb. 24, 2026) (ordering bond hearing rather than immediate release where due process rights were violated by respondents' failure to apply § 1226(a) discretionary detention provisions); *Gutierrez v. Garcia*, No. 2:25-CV-001145-WJ-KRS, 2026 WL 310064, at *5 (D.N.M. Feb. 5, 2026) (noting that process due is individualized bond hearing); *Velasquez Salazar v. Dedos*, No. 1:25-cv-835, 2025 WL 2676729, at *5 (D.N.M. Sep. 17, 2025) ("Because ... § 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before an IJ.").

Accordingly, the Court finds that the proper remedy is an individualized bond hearing pursuant to § 1226(a).

Petitioner also does not argue or demonstrate in his Petition that any due process or constitutional violation *requires* his release.  He does not cite to any standard or law the Court should apply in deciding whether a due process violation requires his release.  For example, should the Court apply the *Mathews* test in determining whether he should be immediately released, and if so, how does the *Mathews* test apply to the facts of this case to warrant his immediate release? The Court therefore declines to *sua sponte* analyze whether his constitutional claim requires his release over a bond hearing, as this issue was not properly argued or presented to the Court. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that a court has no obligation to make arguments or perform research on behalf of litigants) (quoting *Pelfresne v. Village of Williams Bay,* 917 F.2d 1017, 1023 (7th Cir.1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The court] will not do his research for him.").[3] The principle of party presentation is particularly appropriate here, where this district court is overwhelmed with habeas petitions, and petitioners request that the Court rule immediately. If the

---

[3] These principles apply even where a party is pro se.  Although pro se pleadings should be construed liberally, a district court may not act as a pro se party's advocate, advancing arguments or facts on their behalf. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("[T]he court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("At the same time, we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.").  Moreover, pro se parties must comply with the same procedural rules and substantive law as counseled parties. *Nielsen v. Price,* 17 F.3d 1276, 1277 (10th Cir.1994).

Court were to act as Petitioner's counsel and make arguments or do research on his behalf, it would prejudice other petitioners by delaying a ruling on their petitions. Therefore, Petitioner has not properly placed before the Court the issue of whether he must be immediately released, or he has not carried his burden.

Moreover, Petitioner does not argue or explain why the Court should shift the burden to Respondents on the issues of flight and dangerousness at the bond hearing, and the Court declines to *sua sponte* raise this issue. [4]

**III.    This opinion and the judgment should not be construed as addressing detention under § 1231, if that provision becomes applicable.**

The Petition presented the Court with a narrow issue, whether Petitioner's detention *pending a decision on removal* is governed by § 1225 or § 1226.  Once an order of removal has become final, the authority governing a noncitizen's detention shifts to another statutory provision, 8 U.S.C. § 1231(a)(2).  *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 574 (2022) ("After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day removal period, during which the Government "shall" detain the noncitizen.") (citing 8 U.S.C. §§ 1231(a)(1), (2)).

Section 1231 governs the detention of noncitizens "during" and "beyond" the "removal period." 8 U.S.C. § 1231(a)(2)–(6).  In general, when a noncitizen is ordered removed, the Attorney General shall remove them within 90 days, known as the "removal period."  § 1231(a)(1)(A). The "removal period" begins once a noncitizen's removal order "becomes administratively final," §

---

[4] Petitioner may not raise new arguments in any reply, as it deprives the opposing party an opportunity to respond. *Geringer v. Strong*, 766 F. App'x 620, 625 (10th Cir. 2019); *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) (the general rule in this circuit "is that a party waives issues and arguments raised for the first time in a reply brief.").

1231(a)(1)(B), meaning the order has been affirmed by the BIA or the time for seeking review has expired, 8 U.S.C. § 1101(a)(47)(B). *Riley v. Bondi*, 606 U.S. 259, 267 (2025) ("An order of removal becomes final at the earlier of two points: (1) 'a determination by the [BIA] affirming such order,' or (2) 'the expiration of the period in which the alien is permitted to" petition the BIA for review of the order.') (citation omitted).  During the removal period, detention is mandatory. § 1231(a)(2).

Here, no party has asserted that § 1231 applies. Therefore, as of the entry of this order, it appears that the Court retains the ability to order the relief requested in the Petition, i.e., to determine whether §§ 1225 or 1226 applies to her detention pending a decision on removal. The Court's order and judgment should not be construed to opine on whether or when in the future Petitioner may be detained under § 1231.

## IV.    The Court need not rule on Petitioner's remaining claims.

Petitioner also asserted a due process claim. Because the Court grants habeas relief, the Court need not address his other claims or enter a declaration.  *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (finding it unnecessary to address an additional claim in a habeas petition after granting full relief on one claim because "any relief [petitioner] could obtain on that claim would be cumulative."); *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) (stating that "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."); *Scott v. Mullin*, 303 F.3d 1222, 1224 (10th Cir. 2002) (declining to address the remaining claims in a habeas petition after already granting habeas relief on one claim). The Petition focuses on whether §§ 1225(b) or 1226(a) applies to Petitioner's detention. Petitioner's due process claim was asserted in a summary manner. As explained above, Petitioner failed to carry his burden or argue why

16

immediate release is the only available remedy, and why the Court cannot order a bond hearing. Therefore, he has received all relief to which he is entitled.

### CONCLUSION

The Court concludes that Petitioner's detention pending a decision on whether he should be removed from the United States is governed by § 1226(a) as opposed to § 1225(b)(2)(A). Accordingly, the Petition (Doc. 1) is granted in part. Respondents are directed to arrange an individualized bond hearing pursuant to § 1226(a) for Petitioner before an immigration judge within **seven (7) days** of the entry of this Order. **Respondents shall not deny Petitioner bond or parole on the basis that § 1225(b) requires mandatory detention.** However, the Court makes no determination whether or when in the future § 1231 applies to his detention, as it was not briefed or raised in the Petition. The parties are ordered to file a status report within **ten (10) days** of the entry of this order. The Court will enter a separate judgment.[5]

**IT IS THEREFORE ORDERED** that Petitioner's Petition (Doc. 1) is hereby **GRANTED in part** for the reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that the Motion for Temporary Restraining Order (Doc. 2) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Respondents shall provide an individualized bond hearing before an immigration judge for Petitioner pursuant to § 1226(a), as opposed to § 1225(b), within **seven (7) days** of the entry of this order, provided that the Court makes no determination whether or when in the future § 1231 detention provisions may apply. Petitioner should be

---

[5] The Court need not delay entry of judgment to wait for Respondents to comply with the Court's order. The Court "always retains jurisdiction to enforce its lawful judgments, including habeas judgments." *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010); *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992) (explaining that district court has authority to enforce its habeas judgment).

provided notice of the bond hearing and an opportunity to prepare and present evidence, in accordance with due process. If Petitioner has counsel for his immigration case, counsel shall be provided notice of any bond hearing, an opportunity to prepare for the hearing, and an opportunity to appear at the bond hearing.

**IT IS FINALLY ORDERED** that the parties are directed to file a joint status report within **ten (10) days** of the entry of this order.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE